UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DELTA CONSTRUCTORS, INC.                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:09CV119TSL-JCS

ROEDIGER VACUUM, GmbH                                       DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Roediger Vacuum, GmbH (Roediger) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process. Plaintiff Delta Constructors, Inc. (Delta) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that Roediger has not been effectively served with process. However, rather than dismiss, the court will grant Delta the opportunity to effect proper service.

Delta filed this lawsuit against Roediger for breach of contract and breach of express and implied warranties after certain vacuum collection chambers Delta purchased from Roediger and installed as part of a wastewater collection system in Tunica, Mississippi cracked, allegedly because the walls of the chambers were not of sufficient thickness. In its original complaint, filed February 26, 2009, Delta alleged that Roediger is a German corporation which maintains offices in Hanau, Germany, and in both

Bridgeville and Carnegie, Pennsylvania.  At the time the complaint was filed, two summons were issued, one to "Roediger Vacuum GmbH" at the Bridgeville, Pennsylvania address, and the other to "Roediger Vacuum GmbH . . . c/o James P. Docherty" at the Carnegie, Pennsylvania address.  On March 6, counsel for Delta forwarded the summons and complaint to James Docherty at the Carnegie, Pennsylvania address via first class United States Mail.  Plaintiff also transmitted the summons and complaint abroad to employees of Roediger in Germany via international mail and electronic mail.

On March 12, Delta filed an amended complaint, in which it alleged that Roediger, a German corporation with offices in Hanau, Germany, could be served with process at Airvac, Inc., c/o Mark A. Jones, in Rochester, Indiana.  Summons was contemporaneously issued to "Roediger ... c/o AIRVAC, Inc., Mark A. Jones," at the Rochester, Indiana address listed in the complaint.  This summons was returned executed on March 24, 2009, showing that Dennis Horoho was served with the summons on March 17, 2009.

On May 27, 2009, Roediger filed its motion to dismiss for insufficiency of service of process.  In its motion, Roediger objects that plaintiff's attempted service of process of the summons and complaint by direct mail and by email to Roediger in Germany were not proper methods of service under the the Hague Convention for the Service Abroad of Judicial and Extrajudicial

Documents,[1] and further, that the attempt to serve Roediger by serving Airvac, Jones, Horoho and Docherty in the United States was insufficient because none of them is an authorized agent to receive service of process on behalf of Roediger. In its response and accompanying memorandum, Delta addresses only its putative domestic service on Airvac; it makes no mention of the attempted service via mail and email on Roediger in Germany and has thus implicitly conceded it did not follow the Hague Convention. Instead, Delta maintains only that it has properly served its amended complaint on Roediger by serving Airvac as Roediger's domestic agent.[2] The decisive issue on the present motion, therefore, is whether Delta has effectively served process on Roediger by serving its sister corporation, Airvac, in the United States. Put another way, the issue is whether Delta validly served a domestic agent of Roediger in accordance with Federal Rule of Civil Procedure 4(e).

Pursuant to Rule 4(h)(2) of the Federal Rules of Civil Procedures, service of a corporation "at a place not within any

---

[1] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 362 T.I.A.S. No. 6638, reprinted in 28 U.S.C.A. Fed. R. Civ. P. 4, note, at 210 (1992).

[2] Delta does not address whether Roediger was properly served through Docherty, who was originally alleged to be Roediger's agent to receive process. Evidently Delta does not challenge Roediger's affidavit that Docherty was not such an agent.

3

judicial district of the United States" is to be made "in any manner prescribed" by Rule 4(f) for serving an individual, except personal delivery under Rule 4(f)(2)(C)(I). Rule 4(f)(1) provides for service on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."[3] As Germany is a signatory to the Hague Convention, any service on Roediger *in Germany* must comply with the Hague Convention. See Hague Convention, Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."); Volkswagenwerk v. Akitengesellschaft v. Schlunk, 468 U.S. 694, 706, 108 S. Ct. 2104, 2111, 100 L. Ed. 2d 722 (1988) (holding that the Hague Convention is "the exclusive means of valid service" for entities in countries that are signatories to the Hague Convention). The Hague Convention sets

---

[3] The Hague Convention is a multinational treaty formed in 1965 for the purpose of creating an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 383 (5th Cir. 2002) (citing Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 362 T.I.A.S. No. 6638, reprinted in 28 U.S.C.A. Fed.R.Civ.P. 4, note, at 210 (1992)). Both the United States and Germany are signatories to the Hague Convention.

4

forth permissible methods of effecting service. Articles 2 through 7 require each signatory nation to establish a "Central Authority" to act as an agent to receive request of service, arrange for service of documents, and return proofs of service. Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 383 (5th Cir. 2002). The Hague Convention provides for alternative methods of service, but according to the Fifth Circuit, does not permit service by mail. Id. Accordingly, the attempted service on Roediger in Germany by mail was ineffective.[4]

However, the fact that Roediger is a German corporation and that Germany is a signatory to the Hague Convention does not necessarily mean that Roediger is entitled to receive all service of process at its home office in Germany. The Supreme Court held in Schlunk, supra, that process which is attempted to be served abroad must comply with the Hague Convention, but the Hague Convention is not implicated "[w]here service on a domestic agent is valid and complete under both state law and the Due Process

---

[4] As the Fifth Circuit recognized in Nuovo Pignone, some courts have interpreted Article 10(a) of the Hague Convention to permit service by mail "[p]rovided the State of destination does not object." 310 F.3d at 383 (quoting Art. 10(a)). However, even if the Fifth Circuit subscribed to that interpretation, service by mail would still not be available here, as Germany has specifically rejected the validity of service by mail, or any other mode of service other than through the Central Authority, see In re South African Apartheid Litigation Nos. 02 MDL 1499(SAS), 03 Civ. 4524(SAS), 2009 WL 1788051, 5 (S.D.N.Y. June 22, 2009), and therefore, service via the Central Authority is the only means by which an American plaintiff may serve a German defendant, id. See Hague Convention, Note 13(4).

Clause." Schlunk, 486 U.S. at 707, 108 S. Ct. at 2112 ("The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service."). Thus, Schlunk recognized an exception to service pursuant to the Hague Convention where a plaintiff is able to perfect service according to the rules of civil procedure without transmitting the summons and complaint abroad. See id. (service upon domestic statutory agent for service of process sufficient). Thus, if Delta's putative service on Roediger via service on Airvac was authorized under the applicable rules of civil procedure, it was not necessary to effectuate service under the Hague Convention.

Federal Rule of Civil Procedure 4(h) provides that "a domestic or foreign corporation ... must be served: (1) in a judicial district of the United States"

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant....

Rule 4(e)(1) provides in pertinent part that an individual may be served in a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

6

>    (2) doing any of the following:
>    ...
>       (c) delivering a copy of each to an agent
>       authorized by appointment or by law to receive
>       service of process.

Under Mississippi Rule of Civil Procedure 4(d)(4), service shall be made:

>    (4) Upon a domestic or foreign corporation or upon a
>    partnership or other unincorporated association which is
>    subject to suit under a common name, by delivering a
>    copy of the summons and of the complaint to an officer,
>    a managing or general agent, or to any other agent
>    authorized by appointment or by law to receive service
>    of process.

Thus, under both the Mississippi and Federal Rules of Civil Procedure, a plaintiff may properly service a foreign corporation by service on the corporation's appointed agent or agent by law to receive service of process.

In this case, Delta does not contend that Airvac is authorized by appointment to accept service on behalf of Roediger. It contends, though, that Airvac is Roediger's "agent by law" for service of process and that therefore, its service on Airvac constituted service on Roediger.

"Generally, service on a parent, subsidiary, cosubsidiary, or affiliate of a corporate defendant is not service on the defendant. . . ." Raeth v. Bank One, Civil Action No. 05-cv-02644-WDM-BNB, 2008 WL 410596, 3 (D. Colo. Feb. 13, 2008) (quoting Am. Jur. 2d § 255 (2007)). See also Blades v. Illinois

7

Central R. Co., No. Civ. A. 02-3121, 2003 WL 1193662, 2 (E.D. La. March 12, 2003)(stating that "[r]egardless of whether the defendant is located outside of the United States, service upon a subsidiary is generally insufficient to effect service upon a parent corporation") (citing Wright & Miller, 4A Federal Practice & Procedure § 1104, at 592 (2002)). While this is the general rule, courts have consistently recognized that a subsidiary may be found to be a parent corporation's agent at law for service of process, or that a parent may be held a subsidiary's agent at law for service of process where the evidence shows that one is the agent or alter ego of the other. See, e.g., Lisson v. ING GROEP N.V., 262 Fed. Appx. 567, 570, 2007 WL 2962521, 3 (5th Cir. 2007) ("In regard to foreign defendants, even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service."); Sheets v. Yamaha Motors Corp. U.S.A., 891 F.2d 533, 536 (5th Cir. 1990) (observing that "as long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary–without sending documents abroad"); I.A.M. Nat'l Pension Fund, Benfit Plan A v. Wakefield Indus., Inc., Div. of Capehart Corp., 699 F.2d 1254, 1259 (D.C. Cir. 1983) ("While the relationship of parent and subsidiary alone would not suffice ...

8

where the two corporations are not really separate entities service on the parent will reach a foreign subsidiary."); Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 515-516 (D.N.J. 2008) (noting that "[a] number of courts have found that the nature of the relationship between Volkswagenwerk Aktiengesellschaft (VWAG), a German corporation, and Volkswagon of America (VWoA), a domestic subsidiary of VWAG, "annoints VWoA as an agent by law of VWAG for the purpose of service of process") (citing cases); Blades, 2003 WL 1193662, at 2 ("Of course, where the subsidiary is the agent or alter ego of the parent, service upon the subsidiary can be effective against the parent."); Potts v. Dyncorp Intern., LLC, Civil Action No. 3:06cv124-WHA, 2007 WL 899040, 1 (M.D. Ala. March 23, 2007)(concluding that service on a parent corporation is sufficient to reach a foreign subsidiary when an alter ego or instrumentality situation is present).

Of course, here, Airvac is neither a parent nor a subsidiary of Roediger; rather, the two have the same parent and hence are cosubsidiaries, or "sister" corporations. And as Roediger correctly notes, no court of the United States has ever found service upon a domestic sister corporation or cosubsidiary sufficient to perfect service upon a foreign sister corporation. Notwithstanding this, there are numerous cases, including cases from the Fifth Circuit, which lend support to Delta's position that a sister or cosubsidiary corporation may be the "agent at

9

law" for service of process on a sister/cosubsidiary if the plaintiff can make a sufficient showing of the existence of an agency or alter ego relationship between the two.

In its response, Delta has identified two cases which considered the sufficiency of service of process on a domestic cosubsidiary as the putative agent at law for a foreign corporation. In Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008), the court, after first observing that the plaintiffs had not presented any legal authority permitting a subsidiary (VWoA) of a parent (VWAG) to accept service on behalf of the parent corporation's other subsidiaries (AAG and VWDM), went on to explain that the relevant inquiry in determining whether a subsidiary could accept service on behalf of a cosubsidiary was "the level of control exercised by one entity over another." Id. at 515. Ultimately, the court held that the factual record before it prevented it from finding that VWoA was the agent of its cosubsidiaries for the purposes of service. Id. The court stated:

> Nothing in the record ... establishes that AAG has the same type of control over VWoA (a cosubsidiary) as (VWAG, the parent corporation) has over VwoA. For example, there is nothing in the record to show that VWoA is a subsidiary of AAG or that AAG has any ownership interest in VwoA. ... Moreover, Plaintiffs have not submitted any evidence that either AAG or VWoA selects or plays any part in the selection of the senior management of the other. Based upon the evidentiary record, this Court declines to find that VWoA is the

10

>     agent by law for AAG and will not impute service of
>     process upon VWoA to AAG.
>
>     The evidence that VWoA is an agent of VWDM (another
>     cosubsidiary) is weaker still. First, there is no
>     evidence that either VWoA or VWDM has an ownership
>     interest in the other; indeed, VWAG owns both VWoA and
>     VWDM. Second, the agreement between VWDM and VWoA is
>     akin to a supply agreement and it lacks language
>     suggesting that either party to the agreement controls
>     the activities of the other. See Glass v. Volkswagen of
>     Am., Inc., 172 F. Supp. 2d 743, 744 (D. Md. 2001)
>     (declining to find that VWoA is an agent for VWAG or
>     VWDM because no evidence was produced to justify
>     piercing the corporate veil).

Id. at 515.

In Wissmiller v. Lincoln Trail Motorsports, Inc., 552 N.E.2d 295 (Ill. Ct. App. 1990), after first noting that there were no Illinois cases dealing with the question of whether a subsidiary corporation may be served with process by means of service on another corporation which is a subsidiary of a common parent, the court acknowledged that there were cases addressing the question of whether a parent corporation may be served with process through service on a subsidiary, and observed that "[i]n such cases, the focus is on whether the parent corporation is 'doing business' in Illinois, which in turn depends on the relationship between the parent and the subsidiary." Id. at 298. Then, after identifying the relevant factors in determining whether a parent-subsidiary relationship establishes a parent is doing business in Illinois, the court concluded that because the plaintiff had "presented virtually no evidence" concerning the relationship between the co-

11

subsidiaries (the only "evidence" consisting of a bare statement in the complaint that American Honda and R & D were subsidiaries of Honda), it was "apparent that the record does not support a conclusion American Honda and R & D have such a close relationship as to make American Honda R & D's agent for service of process." Id.

In Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331 (5th Cir. 1999), a case decided by the Fifth Circuit, the plaintiff sought to prove that the contacts of the foreign defendant's domestic sister corporation with Louisiana supported the Louisiana district court's assertion of personal jurisdiction over the foreign corporation, arguing that Air Sea, the domestic subsidiary, acted as the agent or was the alter ego of the foreign subsidiary, Panalpina Gabon. The court held that the plaintiff's "argument fails because it cannot demonstrate that Panalpina Gabon exercised control over Air Sea." Id. at 338. The court wrote:

> Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts. This presumption of corporate separateness, however, may be overcome by clear evidence. Invariably such clear evidence requires an additional or a "plus" factor, "something beyond the subsidiary's mere presence within the bosom of the corporate family." There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego. Moreover, the burden of making a prima facie showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory.

12

Id. The court went on explain that in <u>Hargrave v. Fibreboard Corporation</u>, 710 F.2d 1154 (5th Cir. 1983), it had set out certain factors that were to be considered by a court in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary, including:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.

<u>Id.</u> (citing <u>Hargrave</u>, 710 F.2d at 1159-60). The court then stated,

> There is only a sibling corporate relationship between Air Sea and Panalpina Gabon by virtue of Panalpina World's ownership of a majority interest in each. *Thus, it could be argued that an even stronger showing under the Hargrave factors should be required.*

Id. at 338-39 (emphasis added). In this court's opinion, although <u>Dickson</u> was decided in the personal jurisdiction context, the court's analysis is equally pertinent in the service of process context. See 4A Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1104 (3d ed.) (stating, "The close relationship between the cases dealing with the agency relationship for service of process purposes under Rule 4(h) and the cases concerning whether one corporation is the agent of another organization for purposes of considering questions of

13

doing business and amenability to suit in a state makes it imperative that the two lines of decisions be considered together by the careful practitioner.").[5]

Applying the Hargrave factors by analogy to the relationship of the sibling corporations, the court in Dickson found the evidence "fail[ed] to demonstrate, even minimally, that Panalpina Gabon controlled Air Sea or was an alter ego of Air Sea." Id. The court wrote:

> It is undisputed that Air Sea frequently has benefited Panalpina Gabon by assisting maritime companies in contracting with Panalpina Gabon for services in Gabon. But there is no evidence in the record that Panalpina Gabon controlled Air Sea. The record shows that Air Sea is a "middleman" who assists vessel owners in contracting with Panalpina World subsidiaries in countries on the West coast of Africa for maritime service. These facts alone are not enough evidence to establish a prima facie case of control. Dickson has not alleged concrete facts or introduced any evidence to

---

[5] The court notes that in the personal jurisdiction context, a number of courts have recognized that "[a]gency is not ... limited to a parent-subsidiary relationship" and that "[p]ersonal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates." See, e.g., Meier ex rel. Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1273-1274 (11th Cir. 2002) (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 45, 48 (1st Cir. 1993) (asserting jurisdiction over Scottish parent and co-subsidiary based on business relationship with and activities of Massachusetts subsidiary), and Pappalardo v. Richfield Hospitality Servs., Inc., 790 So. 2d 1226, 1228 (Fla. 4th DCA) (finding agency based on evidence that the various parent and subsidiary defendants were "a confusing conglomerate, and were essentially one and the same company both financially and structurally.")).

14

> show that Air Sea had any actual or apparent authority to bind Panalpina Gabon, or that Air Sea and Panalpina Gabon have disregarded corporate formalities to the point of Air Sea being an alter ego of Panalpina Gabon.

Id. at 338. The court observed additionally that "Panalpina Gabon did not dictate policy to Air Sea; Panalpina Gabon did not own any Air Sea stock; and neither controlled the other's daily operations." Id.

The court rejected outright the plaintiff's contention that Panalpina Gabon's corporate affiliation with Air Sea was sufficient evidence of corporate control, and emphasized that "the mere fact that a corporate relationship exists is not sufficient to warrant the assertion of jurisdiction over a related corporate entity." Id. (citing Hargrave, 710 F.2d at 1159). Instead, the plaintiff was required to set forth facts to demonstrate control or alter ego status under the Hargrave factors, and as it had failed to adduce facts showing that Panalpina Gabon controlled Air Sea, personal jurisdiction over Panalpina Gabon could not rest on Air Sea's contacts with Louisiana. See also Williams v. France, No. IP-97-0750-C-T/G, 2001 WL 1385885, 3 (S.D. Ind. Sept. 13, 2001)(holding that same presumption of corporate separateness applicable to parent/subsidiary relationship applied with sister corporations, as did the exception to this general rule, and concluding that a subsidiary's contacts could not be used to support personal jurisdiction over its cosubsidiary, for while

15

both had the same parent, the two had separate by-laws, minutes, corporate records, financial records, and bank accounts, and had different boards, albeit with some shared members, and transactions between the two were conducted as if by two unrelated entities).

From the foregoing, it is reasonable to conclude that a finding that one corporation is the agent of another for purposes of service of process is not limited to the parent/subsidiary relationship, but extends to any corporate relationship in which it is demonstrated, by reference of the relevant factors, that an agency relationship, in fact, exists. Cf. Meier ex rel. Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1273-1274 (11th Cir. 2002) ("Agency is not ... limited to a parent-subsidiary relationship. Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates.); KnowledgeAZ, Inc. v. Jim Walter Resources, Inc., 452 F. Supp. 2d 882, 894 (S.D. Ind. 2006) (observing that "[t]he separate corporate identities may be overcome only where it is shown that the parent company has greater control than would normally be associated with common ownership or that the subsidiary's corporate existence is a mere shell or formality," and that "[a] subsidiary's relationship with its sister corporations is

evaluated similarly.") (citing <u>Williams v. France</u>, 2001 WL 1385885, at 3).

In the case at bar, the evidence is plainly insufficient to support a finding that Airvac is Roediger's domestic agent for service of process. There is no evidence that Roediger has disregarded the corporate formalities or that Roediger or Airvac obtains any financial benefit from the existence of the other, and Delta has offered no evidence that Roediger has any ownership interest in Airvac, or that it controls the operations or board of directors of Airvac, or vice versa. In fact, Delta readily admits it has no evidence that Roediger controlled Airvac. Instead, to establish the required agency relationship, Delta purports to rely on the "close relationship" between Roediger and Airvac, which it submits is evidenced by the facts that both are owned by the same company; that Roediger and Airvac provided technical assistance to Delta during Roediger's performance of the purchase order and an Airvac employee provided "service assistance" to Delta in connection with the installation of the system and one of those Airvac employees traveled to the job site to inspect the cracked chambers and reported to Airvac's president, who in turn reported to Roediger; and that Airvac actually provided notice to Roediger of service on the same day it received the suit papers.

Obviously, the fact that both corporations share the same parent does not establish that one is the agent of the other for

service of process, or for any other purpose, for that matter. Nor does the fact that Airvac notified Roediger of the lawsuit establish agency. Likewise, Airvac cannot be found to be Roediger's agent for service of process solely on the basis that Roediger may have from time to time received assistance from Airvac in the performance of its contract with Tunica.[6] As the record does not support a finding that Airvac was Roediger's agent for service of process, the court concludes that Roediger has not been properly served.

In its response, Delta argues that if the court is inclined to find that service was not proper, then the court should not dismiss the complaint until Delta is given a reasonable opportunity for discovery, and if necessary, an opportunity to effect valid service on Roediger. In the court's opinion, the

---

[6] The court acknowledges, but rejects, Delta's alternative argument that under Mississippi law, Airvac is an ostensible agent of Roediger for service of process. Suffice it to say, the cases cited by Delta in support of this argument do not reasonably support the proposition that Airvac, though not Roediger's agent by law to receive service of process, was Roediger's apparent agent for service. There is no factual basis for concluding that Airvac had apparent authority to accept service for Roediger. Cf. Spurgeon v. Egger, 989 So. 2d 901 (Miss. Ct. App. 2007) (holding that while one may be an apparent agent if he "reasonably appears by third parties to be the authorized agent of the principal," the plaintiff's attempted service on the defendant physician by delivery of summons and complaint to the physician's assistant held ineffective as there was no evidence to indicate that assistant had apparent authority to accept service); Cooley v. Brawner, 881 So. 2d 300 (Miss. Ct. App. 2004) (finding that attempted service on defendant doctor by delivery to receptionist was ineffective where evidence was insufficient to permit determination that receptionist was doctor's de facto agent).

18

request for discovery is not well founded, as there is no reasonable basis upon which it might be contended that discovery would produce evidence to suggest an agency relationship. It would simply be a fishing expedition. However, the court agrees that Delta should be given an opportunity to attempt valid service on Roediger, and toward that end, the court will grant Delta ninety days within which to effect service of process, failing which the case will be dismissed.

Based on the foregoing, while the court does conclude that plaintiff has failed to validly service Roediger with process, Delta will be given an opportunity to effect valid service, and will have ninety days within which to do so.

SO ORDERED this 4th day of August, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE